UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
BRITTANY DIORIO, STEPHANIE HINES, )
and KERRI THURBER,             )
                               )
        Plaintiffs,            )
                               )
    v.                         )    C.A. No. 23-246 WES
                               )
NATIONAL EDUCATION ASSOCIATION, )
NATIONAL EDUCATION ASSOCIATION  )
RHODE ISLAND, and NATIONAL     )
EDUCATION ASSOCIATION BARRINGTON, )
                               )
        Defendants.            )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

This case involves three Barrington Public School teachers who filed suit against their union, the National Education Association ("NEA"), and the union's state[1] and local[2] affiliates (collectively, "Defendants" or "the Union") following their termination by the Barrington School Department ("School District") for refusing to take the COVID-19 vaccine as was required under the School District's then-applicable policy. Not only did Plaintiffs sue Defendants, but they also sued the School

---

[1] National Education Association Rhode Island (hereinafter "NEARI").

[2] National Education Association Barrington (hereinafter "NEAB").

1

District.  See Thurber v. Board of Review, 6AA-2022-00061 (R.I. Super. Ct.); DiOrio v. Board of Review, 6AA-2022-00141 (R.I. Super. Ct.).  The lawsuits against the School District settled and resulted in Plaintiffs being reinstated with backpay, damages, and attorney's fees.  See DX7, Release and Settlement Agreement (May 11, 2023) 1, ECF No. 8-8).  Despite their success, Plaintiffs maintain this lawsuit against the Union.  Defendants filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) ("Defendants' Motion"), ECF No. 8, and Defendant NEA also filed a Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6) ("NEA's Motion"), ECF No. 9.  For the reasons below, the Court GRANTS both Defendants' Motion and NEA's Motion.  Accordingly, this case is DISMISSED WITH PREJUDICE.

I.  BACKGROUND

Ms. Brittany DiOrio, Ms. Stephanie Hines, and Ms. Kerri Thurber are three certified public school teachers who were employed by the School District during the 2021-22 school year and have "excellent work histor[ies]."  Compl. ¶¶ 9, 35, 60, ECF No. 1-1.  Plaintiffs were dues-paying members of the Union.  Id. ¶¶ 36, 61; see id. ¶ 12.  They all assert they are "Bible-believing Christian[s]" who declare their bodies are "temple[s]" and that taking the COVID-19 vaccine is against their religious beliefs. Id. ¶¶ 15, 33, 39, 58, 64, 82.

The Barrington School Committee ("School Committee") adopted a policy on September 2, 2021, entitled "Amended General and Interim Emergency Policy on COVID-19 Related Issues" ("Policy" or "Mandate") that required: "All employees must be fully vaccinated by no later than November 1, 2023, subject to certain exemptions to be implemented in accordance with federal and state law." Id. ¶¶ 10, 37, 62.

Shortly after teachers received notice of the Policy, Plaintiff DiOrio emailed the School District Superintendent Michael Messore to discuss obtaining a religious exemption to the Policy and expressed her concern that the School District would not accept her religious exemption request. Id. ¶ 11. Superintendent Messore responded to Plaintiff DiOrio and said the Policy provided for an exemption that allowed teachers to wear an N95 mask and undergo regular COVID-19 testing in lieu of taking the vaccine. Id. ¶ 12. These points were reiterated to Plaintiff DiOrio during an in-person meeting with Superintendent Messore. Id. ¶ 13. Plaintiff DiOrio submitted a religious exemption request a few days later. Id. ¶ 14. Plaintiff Thurber sent a religious exemption request to Superintendent Messore soon after the adoption of the Policy. Id. ¶¶ 63-64. Plaintiff Hines emailed Director of Human Resources Douglas Fiore shortly after the adoption of the Policy requesting a religious exemption. Id. ¶ 38. Director Fiore responded a few weeks later and stated the

3

School Committee would be discussing Plaintiff Hines's exemption at the October 14, 2021, meeting.  Id. ¶ 41.

According to Plaintiffs, Superintendent Messore and Director Fiore conducted a "secret review" of Plaintiffs' religious exemption requests and denied them because "it would constitute an undue burden on the [School] District."  Id. ¶¶ 17-18, 42-43, 66-67.  The undue burden would be the "potential harm to students and other staff members from catching COVID-19, and the potential lost time from work" if Plaintiffs contracted the virus.  Id. ¶¶ 19, 44, 68.

In mid-October, Superintendent Messore sent a letter to Plaintiffs denying their religious exemption request and recommending that Plaintiffs be suspended from employment on November 1, 2021 and terminated effective January 1, 2022.  Id. ¶¶ 20, 45, 69.

Plaintiffs contacted their union representative to defend them against termination but were allegedly informed the Union would not file a grievance under the collective bargaining agreement ("CBA") or represent them during their termination proceedings.  Id. ¶¶ 21-22, 46-47, 70-71.  The Union allegedly told Plaintiffs they had to receive the vaccine or resign.  Id. ¶¶ 22, 47, 71.

The School District held a pre-termination hearing on October 28, 2021, where Plaintiffs were told again the Union would not

represent them.  Id. ¶¶ 23, 48, 72.  Plaintiffs allege the Union refused to consider their religious exemption as a possible defense to their termination or to engage in an interactive process regarding their exemption request.  Id. ¶¶ 25-26, 50-51, 74-75. The School District allegedly stated the Union "was in agreement" that Plaintiffs should be terminated for not taking the vaccine. Id. ¶¶ 27, 52, 76.  Plaintiffs were formally suspended and terminated.  Id. ¶¶ 24, 49, 73.

Plaintiffs go on to allege the School District and the public had an "irrational fear" "that unvaccinated teachers were so dangerous" to children and immune-compromised family members.  Id. ¶¶ 30, 55, 79.  They allege vaccinated teachers had to be absent after contracting COVID-19.  Id ¶¶ 29, 54, 78.  Plaintiffs also allege there is "no medical evidence" to support the conclusion that they were a "danger to students or co-workers" or that they would "miss more time out of work than vaccinated employees."  Id. ¶¶ 31, 56, 80; see id. ¶¶ 34, 59, 83.

Plaintiffs filed the Complaint against Defendants on May 22, 2022, in Providence County Superior Court.  Defs.' Notice of Removal, ECF No. 1.  Defendants promptly removed the case to federal court.  Id. at 1-2.  Plaintiffs' Complaint states claims for the breach of the duty of fair representation (Count I); religious discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Rhode Island Fair Employment

Practices Act, R.I. Gen. Laws ch. 28-5 ("RIFEPA"), and the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 (Counts II, III, IV); and disability discrimination under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq.,[3] RIFEPA, and RICRA (Counts II, III, IV).  Compl. 10-13.

II.  LEGAL STANDARDS

When a defendant challenges personal jurisdiction by filing a motion under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction.  Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).  Absent an evidentiary hearing, and during the early stages of litigation, the "prima facie" standard applies.  Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 51 (1st Cir. 2020).  Under the prima facie standard, "plaintiffs may not rely on unsupported allegations in their pleadings," but are "obliged to adduce evidence of specific facts."  Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (internal quotation marks omitted) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), and then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).  The

---

[3] Plaintiffs incorrectly plead a disability-discrimination claim under Title VII when, in fact, "Title VII does not prohibit discrimination on the basis of disability."  Lane v. Potter, 699 F. Supp. 2d 358, 362 (D. Mass. 2010).  The Court will analyze Plaintiffs' disability-discrimination claim under Title I.

plaintiff "must go beyond the pleadings and make affirmative proof." Chlebda v. H.E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979). The court must "in turn, take those 'specific facts affirmatively alleged by the plaintiff[s] as true . . . and construe them in the light most congenial to the plaintiff[s'] jurisdictional claim.'" Platten, 437 F.3d at 134 (quoting Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). The court may also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of L., 142 F.3d at 34.

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and "give the plaintiff the benefit of all reasonable inferences." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d

1, 5 (1st Cir. 2007).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation marks omitted) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

III.  DISCUSSION

    All Defendants jointly moved to dismiss under Rule 12(b)(1) and 12(b)(6).  See generally Defs.' Mem. Law Supp. Mot. Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) ("Defs.' Mem."), ECF No. 8-1.  Defendant NEA moved separately to challenge both the Court's exercise of personal jurisdiction and Plaintiffs' stated claims against it.  See generally NEA Mem. Law Supp. Mot. Dismiss Pursuant to 12(b)(2) and 12(b)(6) ("NEA Mem."), ECF No. 9-1.  Plaintiffs responded in opposition to both motions, to which Defendants replied.  See Pls.' Mem. Supp. Resp. Defs.' Mot. Dismiss ("Pls.' Mem."), ECF No. 11-1; Pls.' Mem. Law Supp. Resp. NEA's Mot. Dismiss ("Pls.' NEA Mem."), ECF No. 12-1; NEA's Reply, ECF No. 14; Defs.'s Reply, ECF No. 15.  The matter is fully briefed.

The Court will first address Defendant NEA's argument concerning personal jurisdiction and then address Defendants' motion under Rule 12(b)(6).[4]

A. Personal Jurisdiction

When challenged by a defendant, the plaintiff must show "that personal jurisdiction is both statutorily authorized and consistent with the constitutional requirements of due process." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022). Because subject matter jurisdiction in this case is premised chiefly on the existence of a federal question, Federal Rule of Civil Procedure 4(k)(1) provides the framework for establishing personal jurisdiction. In this instance, because this case does not involve a federal statute authorizing nationwide personal jurisdiction, the Rhode Island long-arm statute sets the bounds of the court's jurisdiction. See Fed. R. Civ. P. 4(k)(1). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-22, is "coexistentive" with the Due Process Clause, meaning the Due

---

[4] Defendants argue, because Plaintiffs received a settlement from the School District and received backpay, they lack standing to bring claims against Defendants because they have been made whole. See Defs.' Mem. Law Supp. Mot. Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) ("Defs.' Mem.") 13-20, ECF No. 8-1. Even so, Plaintiffs still have standing to seek compensatory and punitive damages against Defendants under the relevant statutes. See 42 U.S.C. § 1981a; R.I. Gen. Laws § 42-112-2; FUD's, Inc. v. State, 727 A.2d 692, 696 (R.I. 1999). Thus, Defendants' Rule 12(b)(1) argument lacks merit.

Process analysis controls.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8-9 (1st Cir. 2009).

To exercise personal jurisdiction over a nonresident defendant, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  "As long as due process concerns are satisfied, a federal court 'may exercise either general or specific jurisdiction over a defendant.'"  Chen, 956 F.3d at 55 (quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)).

General jurisdiction exists when a defendant's "general business contacts with the forum are sufficiently continuous and systematic 'as to render [it] essentially at home in the forum State.'"  Id. at 57 (alteration in original) (quoting Daimler AG v. Bauman, 57 U.S. 117, 127 (2014)).  This includes forums where the defendant is incorporated, has its "principal place of business," Mallory v. Norfolk S. R.R. Co., 600 U.S. 122, 137 (2023) (quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021)), or in which the defendant consented to do business, id. at 134-36 (relying on Penn. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917)).

Plaintiffs have not presented any evidence demonstrating the Court can exercise general personal jurisdiction over Defendant NEA. There is no evidence Defendant NEA is incorporated, has its principal place of business, or consented to jurisdiction in Rhode Island. Plaintiffs argue that "given the NEA's pervasive involvement in every state, they are certainly 'at home' everyone [sic] in the country." Pls.' NEA Mem. 6 (footnote and citation omitted). But that precise reasoning was explicitly rejected as a basis for personal jurisdiction by the U.S. Supreme Court. See Daimler AG, 571 U.S. at 139 n.20; Chen, 956 F.3d at 57-58. In fact, Defendant NEA is chartered by federal law which establishes NEA's place of incorporation and principal place of business as Washington, D.C. See 36 U.S.C. §§ 151101(b), 151107. As such, the Court does not have general jurisdiction over Defendant NEA.

To assert specific personal jurisdiction over a defendant, the defendant must "purposefully avail[] itself" of the forum state and the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum." Ford Motor Co., 141 S. Ct. at 1024-25 (first quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958), and then quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 582 U.S. 255, 262 (2017)). In other words, this standard lays out the three criteria for establishing specific jurisdiction: relatedness, purposeful availment, and reasonableness. See Motus, 23 F.4th at 122.

11

Plaintiffs' Complaint, however, fails to allege specifically how Defendant NEA engaged in the forum and how Plaintiffs' claims stem from that engagement. Rather, the Complaint makes general allegations to the "union" and "defendants" without identifying the specific actions of Defendant NEA. See, e.g., Compl. ¶¶ 22, 33, 89. By lumping Defendants together, Plaintiffs want the Court to assert jurisdiction over Defendant NEA by imputing the alleged actions of its affiliates onto the national office. In fact, Plaintiffs argue the Court has specific jurisdiction over Defendant NEA based on an "agency theory." Pls.' NEA Mem. 6. That understanding of specific jurisdiction is legally deficient. Cf. Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 161 & n.5 (1st Cir. 2022) ("The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is the sole owner of the subsidiary." (quoting Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980)). "Local unions and their parent international unions are generally independent entities from each other." Kerns v. Caterpillar, Inc., 583 F. Supp. 2d 885, 894 (M.D. Tenn. 2008) (citing Shimman v. Frank, 625 F.2d 80, 97 (6th Cir. 1980), overruled on other grounds, 744 F.2d 1226 (6th Cir. 1984)); see also Nat'l Elevator Bargaining Ass'n v. Int'l Union of Elevator Constructors, No. RDB-08-966, 2008 WL 4566684, at *4 n.2 (D. Md. Oct. 10, 2008) ("The law is clear that international unions and

their local affiliates must be considered independently when assessing personal jurisdiction."); cf. Reed v. Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am., 945 F.2d 198, 202 (7th Cir. 1991) (affirming the lower court's conclusion that it did not have jurisdiction over an out-of-state union affiliate just because it was associated with the international union that had a presence in the forum); Rodriguez v. Lehigh Sw. Cement Co., No.: 14-CV-03537-LHK, 2015 WL 1325528, at *3 (N.D. Cal. Mar. 24, 2015) ("[C]ourts have found that where both an international union and a local affiliate are named as defendants in a lawsuit, service of process on one does not necessarily confer personal jurisdiction over the other."); Yordan v. Am. Postal Workers Union, AFL-CIO, 293 F.R.D. 91, 95 (D.P.R. 2013) ("[S]ervice of process on an autonomous local union is not sufficient to acquire personal jurisdiction over the national union with which it is affiliated." (quoting Ross v. Runyon, 156 F.R.D. 150, 152 (S.D. Tex. 1994)).

Consequently, the Court cannot assert personal jurisdiction over Defendant NEA based on an "agency theory;" only based on Defendant NEA's contacts with the forum. Plaintiffs do not allege any specific contacts in the Complaint, but they point to an article on an NEA news website in which the president of the NEA announced support for "mandatory vaccination or regular COVID testing" for teachers. Pls.' NEA Mem. 4, 6-7 (quoting PXG, Tim

Walker, <u>NEA President: Vaccine and Testing Requirements "Appropriate, Responsible, and Necessary"</u> (Aug. 12, 2021), ECF No. 12-2). Such an assertion, on its own, is insufficient to establish specific jurisdiction. <u>See</u> <u>Motus</u>, 23 F.4th at 125. To confer personal jurisdiction with respect to a website, a plaintiff needs to supply evidence that the website engaged in "specific targeting of forum residents and evidence that the website has generated 'substantial revenue from forum residents.'" <u>Id.</u> (quoting <u>Chen</u>, 956 F.3d at 60). Plaintiffs here, however, have not offered evidence of either. This dearth of evidence of Defendant NEA purposefully availing itself of the forum is fatal to Plaintiffs' claims against it. <u>Id.</u>

Accordingly, the exercise of personal jurisdiction over Defendant NEA would be inconsistent with the requirements of Due Process and, therefore, NEA's Motion is GRANTED. Plaintiffs' Complaint with respect to NEA is DISMISSED WITH PREJUDICE.[5]

B. Defendants' 12(b)(6) Motion

---

[5] The same analysis would apply to Plaintiffs' state law claims. <u>See</u> <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 51 (1st Cir. 2002) ("In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" (quoting <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995))). Because Rhode Island's long-arm statute is co-extensive with Due Process and Due Process would not be served by hauling Defendant NEA to court in Rhode Island, Plaintiffs' state law claims are also dismissed for lack of personal jurisdiction.

With Defendant NEA now out of the case, the Court turns its attention to the remaining Defendants, NEARI and NEAB ("Affiliate Defendants").    Because  Plaintiffs'  Complaint  fails  to differentiate between the two, the Court's analysis applies to both unless otherwise noted.

     1. Breach of the Duty of Fair Representation (Count I)

The  gravamen  of  Plaintiffs'  Complaint  concerns  their allegations that Affiliate Defendants violated their duty of fair representation by "encouraging" the School District to terminate Plaintiffs' employment, "refusing" to support Plaintiffs during their termination proceedings, failing to file "an unfair labor practice  charge  against"  the  School  District,  "failing  to investigate the matter and affording Plaintiffs an opportunity to present their case," and failing to conduct a Belanger hearing to resolve an alleged conflict between Union members.   Compl. ¶ 86.

A union, "[a]s the exclusive bargaining representative," "has a statutory duty 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with  complete  good  faith  and  honesty,  and  to  avoid  arbitrary conduct.'"   Barth v. City of Cranston, 44 F.4th 65, 69 (1st Cir. 2022) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)).   To make out a claim for breach of the duty of fair representation ("DFR"), the plaintiff must show the union "act[ed] discriminatorily, in bad faith, or arbitrarily toward a union member."   Emmanuel v.

Int'l Bhd. of Teamsters, Loc. Union No. 25, 426 F.3d 416, 420 (1st Cir. 2005).  Conduct is arbitrary where, "in light of the factual and legal landscape at the time of the union's actions," it is "so far outside a 'wide range of reasonableness' as to be irrational." Miller v. U.S. Postal Serv., 985 F.2d 9, 12 (1st Cir. 1993) (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991)).  Conduct is in bad faith if undertaken with "a reckless disregard for the rights of the individual employee." Hussey v. Quebecor Printing Providence Inc., 2 F. Supp. 2d 217, 224 (D.R.I. 1998) (quoting DeMichele v. Int'l Union of Elec. Radio and Machine Workers (AFL-CIO), 576 F. Supp. 931, 935 (D.R.I. 1983)).

The Court reviews a union's actions deferentially in relation to a grievance process because "[i]t is for the union, not the courts to decide whether and in what manner a particular grievance should be pursued." Emmanuel, 426 F.3d at 421 (quoting Patterson v. Int'l Bhd. of Teamsters, Loc. 959, 121 F.3d 1345, 1349-50 (9th Cir. 1997)).  Further, "[a] union has wide discretion in determining whether or not to pursue a grievance to arbitration." DeLucca v. Nat'l Educ. Ass'n of R.I., 102 F. Supp. 3d 408, 414 (D.R.I. 2015) (citation omitted).

As a threshold matter, the DFR derives from a union's designation as the exclusive representative in a collective bargaining agreement.  BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbldg. Workers of Am., 132 F.3d 824, 830 (1st Cir.

16

1997) ("The duty [of fair representation] derives from the union's status _qua_ exclusive bargaining agent."); _see also_ _Bergantino v. City of Cranston_, No. 17-584-JJM-PAS, 2020 WL 1250159, at *6 (D.R.I. Mar. 16, 2020); _Belanger v. Matteson_, 346 A.2d 124, 129 (R.I. 1975) (recognizing the DFR as "a statutory duty on the part of an exclusive bargaining agent").    The Court takes judicial notice that the signatory of the exclusive bargaining agreement with the School District is Defendant NEAB.[6]    _See_ DX1, Agreement Between the Barrington School Committee and NEA Barrington (Dec. 13, 2019), ECF No. 8-2; Defs.' Mem. 31-32; NEA's Mem. 18-19.    This means Defendant NEARI was not the exclusive bargaining agent for Plaintiffs and thus did not owe a DFR.    _See_ _Sine v. Loc. No. 992, Int'l Bhd. of Teamsters_, 730 F.2d 964, 966 (4th Cir. 1984) ("Where, as here, the local is designated as the exclusive bargaining agent responsible for representing employees in the prosecution of

---

[6] Both Plaintiffs, in their Complaint and responses to the motions, and Defendants reference the CBA.    Defendants request that the Court take judicial notice of the agreement to which Plaintiffs do not object.    Therefore, the Court will consider the agreement at this stage.    _See_ _Clorox Co. P.R. v. Proctor & Gamble Com. Co._, 228 F.3d 24, 32 (1st Cir. 2000) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quoting _N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend_, 163 F.3d 449, 454 (7th Cir. 1998))); _Beddall v. State St. Bank & Tr. Co._, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

grievances, only the local can be held responsible."); Blesedell
v. Chillicothe Tele. Co., No. 2:13-cv-451, 2013 WL 6096329, at *3
(S.D. Ohio Nov. 19, 2013) (recognizing that an international union
does not have a DFR where it is not a party to the collective
bargaining agreement and not the plaintiff's exclusive
representative). Accordingly, Plaintiffs' breach of the DFR claim
against Defendant NEARI is DISMISSED. See Paulsen v. Teamsters
Loc. No. 856, No. C-08-cv-03109, 2009 WL 10696040, at *3 (N.D.
Cal. Feb. 13, 2009) ("[I]nternational unions are subject to
dismissal in duty of fair representation cases where they are
neither the recognized collective bargaining representative nor a
party to the [collective-bargaining agreement]."), aff'd, 377 F.
App'x 706 (9th Cir. 2010).

Plaintiffs' breach of the DFR claim rests solely on the
alleged actions of Defendant NEAB. The Court will look at each
specific allegation Plaintiffs make in support of their DFR claim.

First, Plaintiffs allege Defendant NEAB "encourag[ed]" the
School District to terminate their employment if they refused to
take the COVID-19 vaccine. Compl. ¶ 86(a). This allegation is
conclusory, devoid of any facts, and plainly insufficient to
support Plaintiffs' cause of action. See Iqbal, 556 U.S. at 678
(explaining that a pleading that merely "tenders 'naked
assertion[s]' devoid of 'further factual enhancement'" is
insufficient (quoting Twombly, 550 U.S. at 557)); Tankiewicz v.

18

United Serv. Workers Union Loc. 74, No. 13-CV-3914(JS)(ARL), 2014 WL 4828879, at *4 (E.D.N.Y. Sept. 26, 2014) ("[A]llegations [that] are merely legal conclusions and are devoid of any facts that indicate in what way [the union] breached its duty of fair representation" are insufficient). The Court is left to guess what Plaintiffs mean by "encourage." This vague allegation does not state a plausible claim for breach of the DFR.

Next, Plaintiffs allege Defendant NEAB "refus[ed]" to provide Plaintiffs a defense when the School District first suspended them "without pay and then terminat[ed] Plaintiffs' employment." Compl. ¶ 86(b). The Court's review of Defendant NEAB's actions is deferential, and the Court is instructed not to "substitute [its] own views for those of the union." Miller, 985 F.2d at 12. Beyond the conclusory allegations, see Compl. ¶¶ 23, 48, 72, 86(b), there is no factual content to support the notion that Defendant NEAB acted "irrationally" or in bad faith, Miller, 985 F.2d at 12; Smith, 2020 WL 5517571, at *4. Moreover, the public record indicates the opposite to be true seeing as counsel for Defendant NEARI, on behalf of NEARI and NEAB, represented Plaintiffs before the School Committee.[7] Not only that, Plaintiffs were represented

_____

[7] See DX3, Tr. of Barrington School Committee Hearing (Oct. 28, 2021) at 33, ECF No. 8-4 (NEARI's Deputy Executive Director and Deputy General Counsel Jennifer Azevedo explaining, "on behalf of [NEAB] and [NEARI]," that Plaintiffs are "members of NEA Barrington" and that she was there to "represent[] them and their interests . . . [i]n so far as they are members of the collective

by their own counsel at the pre-termination hearing, again demonstrating that Defendant NEAB did not owe a DFR. See DX3, Tr. of Barrington School Committee Hearing (Oct. 28, 2021) at 2, ECF No. 8-4; see also Am. Fed. of Gov't Employees, AFL-CIO, Loc. 916 v. FLRA, 812 F.2d 1326, 1328 (10th Cir. 1987) ("If . . . an employee has the right to chose [sic] a representative other than the union, so that the union does not have an exclusive power that can be used contrary to the interests of the employee, there is no basis for requiring the union to furnish its services."); Burns v. Segerson, 404 A.2d 500, 503 (R.I. 1979). Plaintiff does not state a plausible claim for a breach of the DFR based on this allegation.

Further, Plaintiffs allege Defendant NEAB failed to support them because they did not "fil[e] [] an unfair labor practice charge against" the School District. Compl. ¶ 86(c). This allegation fails for the same reason the previous allegations fail - its conclusory nature does not reflect how Defendant NEAB allegedly acted irrationally or in bad faith.

Moreover, the allegation is particularly ambiguous because Plaintiffs do not allege with whom Defendant NEAB was supposed to file a charge. Plaintiffs' allegation may be implying that

_____

bargaining unit"); see also United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 207-08 (1st Cir. 2016) ("[E]ven within the Rule 12(b)(6) framework, a court may consider matters of public record and facts susceptible to judicial notice" including "congressional testimony").

20

Defendant NEAB should have filed an unfair labor practice charge against the School District before the Rhode Island State Labor Relations Board ("RISLRB").  But filing such a charge would only be appropriate if – in the case of public school teachers – the School District engaged in a violative practice proscribed under state law which includes refusing to collectively bargain, failing to "negotiate or bargain in good faith" with the union, or declining to participate in arbitration.  See R.I. Gen. Laws §§ 28-7-13.1, 28-9-9.3.  Nowhere in the Complaint do Plaintiffs allege the School District engaged in an unfair labor practice.  And even if an unfair labor practice charge could be brought in good faith, Defendant NEAB's declining to file a charge with RISLRB would not be a breach of the DFR because Plaintiffs were free to file their own charge.  See 465 R.I. Code R. § 10-00-1.22(A)(1).  Because Plaintiffs could have filed a charge on their own accord, Defendant NEAB did not serve as their exclusive representative and, therefore, did not owe a DFR.  See Gerald v. Diversified Prot. Corp., No. 1:18-cv-1154, 2019 WL 2601337, at *5 (E.D. Va. June 25, 2019) ("Because plaintiff himself could have pursued an unfair labor practice before the NLRB, [the Union] was not his exclusive representative and there can be no breach of the duty of fair representation."); Steele v. Brewery Workers & Soft Drink, Loc. 1162, No. Civ F 76-142, 1980 WL 2218, at *36 (N.D. Ind. Dec. 4, 1980) ("To the extent that the plaintiffs could have filed charges

21

themselves with the NLRB, the union was not their exclusive representative.").

On the other hand, Plaintiffs may be referring to the grievance procedure outlined in the CBA which allows the Union to appeal a decision of the School Committee to arbitration if it is not satisfied with the disposition of the grievance. See DX1 at 14-15. The DFR does encompass a union's representation of an employee through the grievance process outlined in a CBA, including its representation in arbitration. See Lee v. R.I. Council 94, 796 A.2d 1080, 1083-84 (R.I. 2002); Belanger, 346 A.2d at 131. Nevertheless, the union has wide discretion as to whether to pursue arbitration on behalf of a member. DeLucca, 102 F. Supp. 3d at 414-15. To be actionable, the plaintiff must demonstrate that its decision not to pursue arbitration was "arbitrary, discriminatory, or in bad faith." Id. at 415 (quoting Ayala v. Union de Tronquistas, 74 F.3d 344, 345-46 (1st Cir. 1996)); see Vaca, 386 U.S. at 177. Here, besides its conclusory and ambiguous allegation that Defendant NEAB did not pursue an unfair labor practice charge, Plaintiffs make no allegations demonstrating that its decision to not pursue arbitration against the School Committee was "arbitrary, discriminatory, or in bad faith." As a result, this allegation also does not state a plausible claim for the breach of the DFR.

Finally, Plaintiffs allege Defendant NEAB breached the DFR because it failed to conduct a Belanger hearing to resolve a conflict between members' interests and failed to conduct an investigation where Plaintiffs would have had "an opportunity to present their case." Compl. ¶ 86(d). These allegations fail to state a plausible claim for a breach of the DFR for two reasons. First, as Defendants argue, there was nothing to investigate. Defs.' Mem. 36-37. The School District imposed a COVID-19 requirement, Plaintiffs sought a religious exemption, and the School District refused to grant it. There were no other facts Defendant NEAB needed to gather. See Henrikson v. Town of E. Greenwich, 94 F. Supp. 3d 180, 192 (D.R.I. 2015) ("With respect to the [u]ion's obligation to investigate, there was nothing to learn that it did not know."). To the extent Plaintiffs think this hearing could have been an opportunity for them to submit conspiracy theories and junk science about the efficacy of the COVID-19 vaccine, see Compl. ¶¶ 29-31, 34(c), 54-56, 59(c), 78-80, 83(c), they are misguided; opinions that may be fodder for the dark depths of Twitter have no place at a Belanger hearing.

Second, a Belanger hearing would not have achieved anything. The purpose of such a hearing is to assist a union in choosing a side between the competing interests of two members following an investigation and an opportunity for each side to present their position. See Belanger, 346 A.2d at 130-31; see also R.I. Gen.

23

Laws § 28-7-16.  Here, there is no conflict between members.  A union can both support a school district's vaccine mandate but oppose the termination of members who seek an exemption.  Those two positions are not mutually exclusive.  Because Plaintiffs' allegations do not present a conflict for which the Union would need to prepare for and initiate a Belanger hearing, the respective allegations do not state a plausible claim for a breach of the DFR.

In sum, the Court dismisses Plaintiffs' breach of the DFR claims against both Defendants NEARI and NEAB.  With respect to Defendant NEARI, because it was not a signatory to the CBA with the School District, it did not owe a DFR to Plaintiffs.  With respect to Defendant NEAB, Plaintiffs' Complaint fails to state a plausible claim for breach of the DFR.

2. Religious Discrimination (Counts II, III, and IV)

Plaintiffs allege Affiliate Defendants discriminated against them because of their religious beliefs as "Bible-believing C[h]ristan[s]."  Compl. ¶ 89(a).  According to Plaintiffs, "Defendants failed to engage in an interactive process with Plaintiffs regarding their religious exemption request and refused to represent them against their employer in the termination." Id. ¶ 89(d).  Such failure to represent Plaintiffs allegedly "empowered" the School District "to terminate them from

unemployment [sic] believing that the union would not support them." Id. ¶ 89(e).

Plaintiffs allege Affiliate Defendants engaged in religious discrimination under a failure-to-accommodate theory. See 42 U.S.C §§ 2000e(j), 2000e-2(c)(1), (3); R.I. Gen. Laws §§ 28-5-6(15) & -7(3); EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002) ("Title VII requires employers and labor organizations to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees."). Religious discrimination claims under Title VII are analyzed under a two-part framework. Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023). First, the plaintiff has the burden of making a "prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Id. (quoting Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 12 (1st Cir. 2012)). The religious accommodation must be a "motivating factor" for the adverse employment action. EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 772-73 (2015). Then the burden "shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship."[8] Lowe, 68

---

[8] The framework for Title VII also applies to Plaintiffs' claims under RIFEPA and RICRA. See Lima v. City of E. Providence,

F.4th at 719 (quoting <u>Cloutier v. Costco Wholesale Corp.</u>, 390 F.3d 126, 133 (1st Cir. 2004)).

Affiliate Defendants argue Plaintiffs failed to allege a plausible causal connection between Defendants' actions and their termination.  Defs.' Mem. 26-27.  The Court agrees.  To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  The allegations "must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 555.  In fact, the plaintiff must "allege a causal chain sufficient to ground an entitlement to relief."  <u>Doe v. Backpage.com, LLC</u>, 817 F.3d 12, 24 (1st Cir. 2016).  In other words, the allegations must be such that the defendant's action plausibly caused the plaintiff's harm. This requires that the causal chain from an alleged violative act to harm go beyond mere speculation.  <u>Id.</u> at 25.  In matters involving employment discrimination, "[h]ypothetical possibilities are not materially adverse employment actions." <u>Probst v. Ashcroft</u>, 25 F. App'x 469, 472 (7th Cir. 2001).

---

17 F.4th 202, 207 (1st Cir. 2021); <u>Casey v. Town of Portsmouth</u>, 861 A.2d 1032, 1036 (R.I. 2004).  The causation standard for RICRA "appears to be unsettled," however.  <u>Travers v. Cotiviti, LLC</u>, No. 18-562 WES, 2022 WL 834168, at *7 (D.R.I. Mar. 21, 2022). Nevertheless, that question does not need to be decided here. Whether the causation standard is "but-for" or a "motivating factor," Plaintiffs' pleadings would fail either way.

Under Plaintiffs' theory, because Affiliate Defendants did not engage with them in an interactive process concerning their religious exemption request - a process, Plaintiffs allege, the School District also did not engage in – and because Affiliate Defendants did not represent them in their termination process,[9] the School District - the employer who had the ultimate authority to grant an exemption – "felt empowered" to dismiss Plaintiffs for not taking the vaccine because they "believ[ed] that the union would not support them." See Compl. ¶¶ 89, 94. Plaintiffs do not offer any further allegations to substantiate their claim that the School District would have acted differently if Affiliate Defendants "support[ed]" Plaintiffs.[10] These allegations are speculative and cannot form the basis of its religious discrimination cause of action. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 82 (1st Cir. 2013) ("The superficiality of the causation allegation, coupled with the speculative nature of the claim as a whole, makes manifest that

---

[9] This is an allegation that appears contrary to the public record. See DX3 at 33.

[10] Again, this is an assertion that appears contrary to the public record. See DX3 at 34-35 (Counsel Azevedo: "The Union is asking . . . for these members who have expressed an objection to the vaccination, that the school district not place the members on unpaid leave and reject Superintendent Messore's recommendation to terminate them. The School Committee should allow these vital members of the Barrington community to continue in their employment by using mitigation strategies against COVID-19 that are already in place in school districts and are proven to work.").

the plaintiffs have failed to plead a plausible cause of action."). Moreover, Plaintiffs fail to provide further context as to why the School District felt "empowered" to terminate Plaintiffs because of Affiliate Defendants' actions. A failure to accommodate theory cannot rest on an assumption that the School District would have acted differently but for Affiliate Defendants' lack of representation.

Plaintiffs' reliance on EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico as an example of a prima facie case of religious discrimination by a labor union against a member, is inapposite. 279 F.3d at 57 (reversing the lower court's grant of summary judgment because there was a genuine dispute concerning the employee's religious belief). There, the plaintiff had a religious objection to joining the labor union where membership was a job requirement. Id. at 51. The plaintiff's refusal to join the union led to his discharge. Id. at 52. Union Independiente is distinguishable in two ways. First, the First Circuit there only addressed the narrow issue of whether plaintiff's "bona fide religious belief" was a triable issue of fact. Id. at 55-57. Second, as Affiliate Defendants note, that case involved a situation where the union did not accommodate the plaintiff's purported religious objection whereas here, Affiliate Defendants were not the decisionmakers who

could have offered Plaintiffs an accommodation to the Policy.  See Defs.' Reply 6-7.

Similarly, Montague v. United States Postal Service, another case Plaintiffs rely on is also distinguishable from this case. No. 22-20113, 2023 WL 4235552, at *1 (5th Cir. June 28, 2023) (reversing the lower court's grant of summary judgment on the plaintiff's disability discrimination claim where she wanted to partially work from home as an accommodation).  Again, there, the defendants had the authority to grant such an accommodation but denied it because the defendant believed it was unreasonable.  Id. at *4.  Here, Affiliate Defendants did not have control over whether Plaintiffs could receive an exemption to the Policy.  That decision was up to the School District.[11]  Nevertheless, Defendant NEARI advocated that Plaintiffs be exempted.  See DX3 at 34-35.

_____

[11] Though not raised by Defendants, it should not be assumed Plaintiffs adequately alleged a conflict between the School District's Policy and their bona fide religious beliefs. Plaintiffs neither allege any non-conclusory facts about their religious beliefs nor the purported conflict between those beliefs and the Mandate.  The Complaint only alleges, multiple times, that Plaintiffs are "Bible-believing C[h]ristian[s] and have a bona fide belief that prohibits [them] from taking the COVID-19 vaccine" and that Plaintiffs believe their "body is a temple, and that the COVID-19 vaccine was against [their] religious beliefs."  See Compl. ¶¶ 15, 33, 39, 58, 64, 82, 89, 94.  "While the Court is required to construe the pleaded facts in the light most favorable to Plaintiffs, it need not take conclusory assertions at face value."  Rainey v. Westminster Pub. Schs., No. 22-cv-03166-RMR-KAS, 2023 WL 6292722, at *3 (D. Colo. Sept. 27, 2023).  "[N]aked assertions" concerning the conflict between Plaintiffs' religious beliefs and the policy that are "devoid of 'further factual enhancement'" are insufficient to satisfy the first part of the

29

Accordingly, because Plaintiffs fail to state a claim for religious discrimination, the Court GRANTS Defendants' Motion under Rule 12(b)(6) as to that claim.

### 3. Disability Discrimination (Counts II, III, and IV)

Plaintiffs allege they were discriminated against for having a disability. Their disability? According to Plaintiffs, they are disabled for simply being unvaccinated. This asserted disability defies both law and logic.

Title I of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of

---

failure to accommodate claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)) (internal edit omitted); see, e.g., Cagle v. Weill Cornell Med., No. 22-cv-6951 (LJL), 2023 WL 4296119, at *4 (S.D.N.Y. June 30, 2023) ("Bald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII."); Friend v. AstraZeneca Pharms. LP, No. SAG-22-03308, 2023 WL 3390820, at *3 (D. Md. May 11, 2023) ("While Plaintiff's Complaint asserts that he 'had bona fide religious beliefs that conflicted with AstraZeneca's COVID-19 vaccine mandate,' it alleges no facts to allow this Court to assess what Plaintiff's religious beliefs are and how they conflict." (internal citation omitted)); Gage v. Mayo Clinic, No. CV-22-02091-PHX-SMM, 2023 WL 3230986, at *3 (D. Ariz. May 3, 2023) ("Plaintiff does not explain her religious beliefs. Nor does she explain how practicing them conflicted with her employment duties at the Mayo Clinic."); McKinley v. Princeton Univ., No. 22-5069 (MAS) (TJB), 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) ("Without Plaintiff providing facts showing what sincerely held religious belief she holds that prevented her from complying with COVID-19 Policies, Plaintiff fails to adequately allege a cognizable claim for religious discrimination."). If raised by Defendants, this deficiency would have been an additional basis to dismiss Plaintiffs' religious discrimination claims.

disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Plaintiff bears the burden of establishing a prima facie case of discrimination "by showing that he (1) was disabled within the meaning of the ADA, (2) was a 'qualified individual,' and (3) was discharged in whole or in part because of his disability." Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 53 (1st Cir. 2019) (citing Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001)).  The ADA defines "disability" in three ways: "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A); "a record of such an impairment," id. § 12102(1)(B); or "being regarded as having such an impairment," id. § 12102(1)(C); see also Mancini v. City of Providence, 909 F.3d 32, 39 (1st Cir. 2018).

Plaintiffs do not claim in either their Complaint or opposition to Defendants' Motion that they have an actual disability under the ADA.  Instead, Plaintiffs assert they were "regarded as" disabled because they were dismissed for being unvaccinated.  Pls.' Mem. 11-12.  "Regarded as" claims primarily fall into one of two categories: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity

mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sullivan v. Neiman Marcus Grp., Inc., 358 F.3d 110, 117 (1st Cir. 2004) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)); see 42 U.S.C. § 12102(3)(A). "A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002).

Choosing to not receive the COVID-19 vaccination is not a disability under the ADA. The "regarded as" prong of the ADA's definition of disability "does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future." EEOC v. STME, LLC, 938 F.3d 1305, 1315 (11th Cir. 2019). The impairment must "exist at the time of the adverse employment action," and so the statute "does not [reach] impairments that manifest after the alleged discrimination." Id.

Plaintiffs allege Affiliate Defendants, because of Plaintiffs' unvaccinated status, discriminated against them because they "believed that [Plaintiffs] were more likely to cause harm to children or co-workers, or miss more time out of work, than vaccinated employees" which "resulted in [Defendants] failing

to represent Plaintiffs in their termination proceedings." Compl. ¶¶ 90(a)-(b); see Pls.' Mem. 12. But even if true, Plaintiffs' claims fail as a matter of law. An employee's heightened risk of contracting COVID-19 because she did not receive the vaccine cannot be "regarded as" a disability. Earl v. Good Samaritan Hosp. of Suffern, No. 20-cv-3119 (NSR), 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) (finding that the plaintiff "failed to plausibly allege that [his employer] perceived him to be disabled based on his potential to infect patients with COVID-19" because the "perception of infectiousness is not the same as perceived disability"). This is because Plaintiffs, whether they put on masks or go through regular testing, can still perform their duties as teachers regardless of their vaccination status. See Jorgenson v. Conduent Transp. Sols., Inc., No. SAG-22-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) ("[V]accination status is likewise not an impairment or an impediment to work-related tasks."). Refusing to get the vaccine "reflects a personal choice" that "cannot be considered an impairment under the ADA." Speaks v. Health Sys. Mgmt., Inc., No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022). Otherwise, every employee who refuses to take the vaccine would be "regarded as" disabled, "which is of course not a plausible inference."[12] Id.

---

[12] Plaintiffs' reliance on Booth v. GTE Federal Credit Union is misplaced. There, the plaintiff's ADA claim was based on the

This Court agrees with every other court that has considered this question and concludes Plaintiffs fail to state a plausible "regarded as" disability claim because they have not alleged that Affiliate Defendants perceived them as disabled at the time the School District terminated them for being unvaccinated. See, e.g., Chancey v. BASF, No. 23-40032, 2023 WL 6598065, at *2 (5th Cir. Oct. 10, 2023) (per curiam); Williams-Moore v. Quick Int'l Courier, LLC, No. 22-cv-3592, 2023 WL 6292540, at *4 (E.D.N.Y. Sept. 26, 2023) ("[B]ecause vaccines are designed to prevent illness, rather than to treat it, the fact that a company required employees to obtain the COVID-19 vaccine does not plausibly suggest that the company believed all its employees had impairments that substantially limited their ability to perform major life activities."); Gallo v. Wash. Nat'ls Baseball Club, LLC, No. 22-

---

defendant's actions after she informed her manager that she had a symptom that might be affiliated with the coronavirus. No. 8:21-cv-1509-KKM-JSS, 2021 WL 5416690, at *4 (M.D. Fla. Nov. 20, 2021) (Mizelle, J.). Though unpersuasive, the court there concluded the plaintiff alleged a "regarded as" disability claim under the ADA where the defendant ordered the plaintiff to stay home until she could provide a negative COVID-19 test after she told the defendant "she felt tired." Id. The plaintiff did not return to work for almost a month but was fired after she returned to work following an unrelated incident. Id. at *1. The plaintiff did not allege any long-term symptoms of COVID-19. Id. Though the reasoning in Booth suggests that any individual who claims some sort of COVID-19 symptom, no matter how mild, could have a plausible claim for disability discrimination following an adverse employment action, that case is distinguishable from here where Plaintiffs have not alleged any perceived symptoms indicative of COVID-19. Here, the ADA claim is only based on Plaintiffs' vaccination status.

cv-01092 (APM), 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023); Hice v. Mazzella Lifting Techs., Inc., 589 F. Supp. 3d 539, 550 (E.D. Va. 2022) (holding that "possible future exposure to COVID-19 [based on age] does not constitute an impairment under the ADA"); Jorgenson, 2023 WL 1472022, at *4 (ruling that the employer's "decision to protect its workplace by requiring its employees to attest to their vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); Shklyar v. Carboline Co., 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022) (holding that employee's "conclusory allegation that [employer] regarded her as having a disability [based on its COVID-19 policies] is implausible"), aff'd, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023).

Therefore, because Plaintiffs fail to state a claim for disability discrimination, the Court GRANTS Defendants' Motion under Rule 12(b)(6) as to that theory.

C. Dismissal with Prejudice

Defendants argue that, if the Court were to grant Defendants' motions to dismiss, it should do so with prejudice because allowing Plaintiffs to replead would be futile. Defs.' Mem. 44; NEA's Mem. 19. Plaintiffs did not respond to this argument. Though the Court "should freely give leave [to replead] when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court "may deny leave if amending

the pleading would be futile," HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 578 (1st Cir. 2014).

Here, allowing Plaintiffs to amend their Complaint would be futile.  Although Plaintiffs declined the opportunity to address what additional facts they would allege if the Court were to dismiss the Complaint, the Court finds no amount of additional facts would repair the deficiencies in Plaintiffs' Complaint. Leave to replead could not get around the judicially noticeable fact that Defendants were not the exclusive bargaining agent for Plaintiffs, fatally undermining their breach of the DFR claim. Further, no amount of repleading can repair the fact that being unvaccinated is not a disability.  Finally, leave would be futile with respect to Plaintiffs' religious discrimination claim because Defendants did not have the authority to grant exemptions to the Mandate, the School District did, and Defendant NEARI advocated that Plaintiffs receive an exemption.  Accordingly, Plaintiffs will not be given leave to replead.

IV.    CONCLUSION

    For the reasons stated above, Defendants' Motion to Dismiss Pursuant to 12(b)(1) and 12(b)(6), ECF No. 8, is GRANTED and Defendant NEA's Motion to Dismiss Pursuant to 12(b)(2) and 12(b)(6), ECF No. 9, is GRANTED.  Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.  Judgment shall enter accordingly.


IT IS SO ORDERED.

William E. Smith
District Judge
Date: November 6, 2023